Anthony Robinson is not disputing the district court's turnover of his stimulus check. I want to make that very clear. We do believe that that was recoverable under Section N of the Mandatory Victims Restitution Act. I thought he only wanted to turn over half of it. He did, I think, in light of the Kidd decision, though. He wanted to turn over half of his account, Your Honor, which roughly approximated the amount of the stimulus check, but I do believe the full amount is recoverable under 3664N. What Mr. Robinson does take issue with is the fact that the encumbrance and turnover of his remaining balance was done without considering where it came from, what it consisted of, and whether any of it was exempt from collection by the government. Does the record reflect the source of the remaining money? It does not, Your Honor. And in light of that, without considering what those contents were and without making a record of that, we do believe that remand is appropriate here for the district court to conduct an accounting and to determine whether any of the non-stimulus funds should be exempt from collection under either the MVRA or the lien statute cited by the government. Let's assume we did that. Would the court be able to take half of the remaining funds pursuant to the terms of the judgment? Your Honor, that I do not know because I think that this court's decision in Kidd casts some doubt on whether to the extent that the account includes accumulated prison wages, whether those would be recoverable. Certainly they're not under N. They may be under K. However, it seems somewhat unclear and it seems the district court is probably the most appropriate venue to make that determination. Now, as we stated in our briefing, the MVRA does provide a duty on the district court to conduct consideration of the defendant's financial condition before modifying or entering a restitution order. That does not appear to have happened in this case beyond the fact that the court said there was a stimulus fund, recognized that there were some funds in excess of the stimulus check, and then simply encumbered all of it. I understand that the government... There's not much of a record here, is there, as to... No, there is not. I mean, I couldn't even figure out how much the stimulus check was for. I agree. There's this $1,400 entry in that one document, you know, that says Inmate Financial Responsibility Program at the top, which kind of looks like a ledger. Yes, sir. Is that the stimulus, do you think? I mean, is there any evidence to tie that up to the stimulus check? From what I can discern, it does represent the stimulus check, but, again, I don't think the record gives me the ability to state to this court with full confidence that it, in fact, was the stimulus check. I assumed that it was, but, again, the record is not clear enough for me to state that with any full confidence before this court. So explain to me, what is the statutory basis where you said that some of the non-stimulus money may be exempt? Correct. What is the statutory basis for the non-stimulus money being exempt? Well, part of it would be the Consumer Protection Act, to the extent that it's accumulated prison wages. I do believe that Section 303 of the Consumer Protection Act, which is codified, I believe, under 15 U.S.C. Section 1673, that is specifically cited in the lien statute which the government relies on, which is 3613A, and that limits the extent to which wages can be garnished. Not to mention that in Kidd, the recent decision from this court, it did state that unequivocally the wages would not be recoverable under the 3664N provision, which applies, I understand, to more than windfalls. Based on that decision, but nevertheless, it was single payments from outside sources, so prison wages were not held to be a part of that. There was some doubt, I think, in Kidd as to whether those wages would be recoverable under 3664K, which allows courts to recover money if there's been a material change in the defendant's economic condition. But Kidd did express some concern. So, Your Honor, to answer your question, I think that there is that one statutory basis, but there's also a presidential basis through Kidd that would potentially prohibit the turnover of prison wages. Kidd did note that there are concerns with respect to prison safety and administration as it affects inmate morale. It could potentially discourage prison work, and it could also interfere with the Bureau of Prisons' inmate financial responsibility program. So, I do think that... What does that have to do with the statute, whether it would interfere with inmate morale? Well, Your Honor, that was a concern that this court expressed in Kidd. In arriving at the conclusion that 3664N did not authorize those funds, I do think it counsels to proceed with caution with respect to making them encumberable or recoverable under the material change in circumstances. And I also think that what might counsel... No, no, N is about substantial resources from any source, not material change. Correct, Your Honor. Yes, but... But you're saying under N, any source does not include prison wages? Per this court's decision in Kidd, that was unequivocal, Your Honor. And then it stated that they could, in certain circumstances, be recoverable under subsection K. However, I think with the policy concerns expressed in that decision, that it would be... that you can't just move ahead full throttle under section K. There should be some consideration, I think appropriately by the district court, to make a careful determination as to whether the prison wages would actually represent a material change in the economic condition of the defendant. So I do believe that a remand is certainly appropriate here, given all of those factors. And given the limited time, one additional point I would like to make is that, to the extent the government does rely on 3613, which is the lien statute, I don't believe that that is something that provides unfettered access to an inmate trust account. We're not contesting the fact that a lien exists by any means. However, the existence of a lien is separate from its enforcement. And again, the Consumer Protection Act is cited very specifically in that lien statute, and that therefore a determination needs to be made as to the extent to which the court can encumber and turn over the funds pursuant to that statute. So I understand that I have gone into my rebuttal time, but if there are any further questions, I am happy to answer them. Thank you. Thank you.  My name is Anthony DeBray for the United States. Is it okay if I remove my mask? Yes. Yes, you may proceed. Thank you, Your Honor. I'm asking the court to affirm the district's court order that granted the government's turnover motion and ordered all encumbered funds to be paid toward Mr. Robinson's outstanding restitution. Today I'll be arguing the district court did not abuse its discretion because it properly relied on multiple statutes that permitted the turnover of all of Mr. Robinson's funds. I'll start first by addressing the lien provision. Under 18 U.S.C. 3613, an order of restitution is a lien in favor of the United States on all of the defendant's property, and it can be enforced against all of the defendant's property through all available and reasonable means, subject only to a few limited exceptions for specific types of property that are exempt from the government's lien, such as wearing apparel, school books, fuel, furniture, tools of the trade, things of that nature. In this case, the judgment against Mr. Robinson ordering restitution… Wouldn't that argument effectively make Sections N and K superfluous? It wouldn't, Your Honor, and here's why. Sections N and K allow for things other than what 3613 allows for. So although the statutes work in complement with each other, for example, under K, it allows the victim to come to the court and say there's been a mere material change. It allows the court to adjust the payment schedule. It allows the government to do the same, right? Right, so that's not necessarily allowed under 3613. Well, okay, let me rephrase it. If the government has a lien and can seize anything that comes at any time, what's the purpose of N and K, at least vis-à-vis the government? Well, for example, under N, if there was certain property that fell into the exempt categories under 3613, the lien provision, such as furniture or tools of a trade, the government might not be able to pursue that under 3613, but a district court still could find that the receipt of those items constitutes substantial resources under N. So they're not necessarily superfluous. They do work in concert with each other, and I would point out to the court when evaluating these statutes, it's important to keep in mind the purpose of the statutes. And the U.S. Supreme Court said in the Dolan case that the substantive purpose of the Mandatory Victims Restitution Act is to ensure that victims of crime receive full restitution. And then the Eighth Circuit has also recognized in the Adetoloi case that the intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers. Our interpretation of the statute... Well, if we're going to get into purpose, then that sort of gets back to the Kidd argument. Well, should they be allowed to keep at least some of their prison wages? I mean, if we're going to start talking about policy, isn't that exactly what the other side's arguing? The policy should be that for morale purposes and other purposes, they should be allowed to keep at least some of their wages? Well, I was simply citing the purpose of the statute because the Eighth Circuit has said that the interpretation of the statute must be guided by that substantive purpose. But what the government's doing is enforcing a statutory scheme. Under 3613, all funds fall within that lien. So as I understand the government's argument, is that if a person is participating in the prison industries program, you can seize all of their wages? Well, under 3613, yes. Under 3664K, yes. In light of the Kidd decision, it would depend if they're earning prison wages. Perhaps prison wages would not be allowed under N in light of the Kidd decision. But Kidd certainly says that the stimulus check could be seized, transactions from outside sources. Well, doesn't that get back to we don't know what these funds are? We know part of it's stimulus, and it's represented that part of it's prison wages, but we don't know. So do we need to have a remand? We don't, Your Honor. A remand's not necessary, and here's why. An accounting to determine the source of the funds would only be relevant under 3664N. To see if there might be some prison wages, as I just mentioned, because in light of Kidd, prison wages can't be collected. But in this case, Your Honor, the government moved under additional statutes, and the district court granted the turnover motion under additional statutes, those being 3613 and 3664K, both of which allow the turnover of all funds regardless of the source. Well, you just said that they can't get prison wages. Now you're saying they can get prison wages. You're saying under 3613 the government can get all the prison wages. Correct. So Kidd's wrong? Well, here's the difference in Kidd. In Kidd, Your Honor, the government's turnover motion was based only on 3664N and 3664K, and then what the district court did in Kidd was grant the turnover motion only under N without any discussion of K. So then there's the footnote in Kidd that says the government did not proceed under the Federal Debt Collection Procedures Act here, perhaps because it knew that a claim for garnishment or a lien turnover order would be subject to Consumer Credit Protection Act limitations on the garnishment of earnings. I didn't see anything in the district court's order about the Debt Collection Procedures Act and analyzing the limitations on garnishment of earnings under the Consumer Credit Protection Act. Was that analysis done? So in the district court, they didn't reference the CCPA, and although there is some discussion of the CCPA in the Kidd decision, Kidd, I think, acknowledges it was dicta because in that case 3613 wasn't necessarily being analyzed. But what the Kidd footnote I don't think necessarily distinguished was the important distinction between a garnishment for wages directed to an employer under the garnishment statute, 28 U.S.C. 3205, versus what's at issue here, which is a lien turnover under 3613 for cash in a financial account. And what I referenced in my 28J letter was the case of Koskoska and Sharton, which discussed that fundamental difference between wages, on the one hand, and assets that originated as wages. And I would just direct the court's attention to the Sharton case, which says, and I quote, the CCPA garnishment limitations do not extend to wages deposited in financial institutions and do not apply to funds held in a bank account, even if those funds were derived from employment earnings, end quote. So in short, the CCPA does not limit the government's enforcement action here because the government's pursuing a lien turnover of cash in a financial account under 3613, rather than a garnishment for wages under 3205. Isn't your argument under 3613 that the government concedes it all also contrary to the judgment, which says concededly it's due immediately, but if he can't pay immediately, then no more than 50% of the available funds? So it's not inconsistent because the judgment ordered all funds due immediately. And what that language allows is for the government to go in and collect above and beyond what other installment payment plan might have been in effect if payment was not made immediately. And I would direct the court's attention to the three cases I cited in the briefs, which were Barron's, Van Horn, and Matheny, all of which stand for the proposition that a district court doesn't err when they order a lump sum payment due immediately and then directs remaining restitution to be paid through the inmate financial responsibility program, which is what the district court did here, and the government's not limited to just pursuit of the installment plan. You sort of just dismissed the argument that he's entitled to an accounting because it's joint and several liability. Why shouldn't the government be required to show that he still even owes the money? Well, in terms of joint and several liability, that's really not at issue in this case because joint and several liability says that each defendant is liable for the full amount of the judgment separately, and here there's no dispute that the restitution obligation has not been satisfied. Well, but how do we know that if the government isn't? You just said you don't have to. You just sort of dismissed that argument and said, well, we don't have to do an accounting. So how do we know that if you don't do an accounting? Well, the turnover motion recited what amounts were still owed and outstanding in terms of restitution, and the district court order also found that restitution was still outstanding. So we do know that he owed money, and it was in excess of the $2,700 that the district court ordered to be turned over. So there's really no error in that sense. What makes you think the district court was ordering turnover of more than the stimulus payments? The discussion in the order is all about how there's no exemption for stimulus payments. What makes you think the district judge intended to turn over all of his prison wages? Well, there's certainly no evidence that there were prison wages contained in the account, and that's what I pointed out in my brief. Mr. Robinson never argued at the district court level that he was working, that he was making X amount of money, that his account contained any prison wages. I'm sorry, Judge, I'm out of time, but if I could just briefly answer that final question. Yes. So the issue of prison wages was first brought up on appeal by Mr. Robinson's counsel, and I point out in the brief that's untimely. It should be considered waived because he never brought that to the district court's attention. What do you think was in this balance other than the stimulus payment? You just didn't make a record on where the other money came from, as I understand it. Transactions from outside sources, meaning wire transfers from friends and family, made up the remainder of the funds. How do we know that? Where's that in the record? Well, it's not contained in the record, however, and I'm going to preference this by admitting it's not contained in the record, but we have since learned. We can't. No, I'm interested in what's in the record. What's in the record about the amount in the account and where the money came from? In terms of the non-stimulus money? Well, even the stimulus money. How do you know how much is stimulus money? Well, that brings me back to the earlier point where the source and drilling down into where the money came from is only relevant under N, but not K or 3613. So what the district court has granted the turnover under all three of those statutes, and under 3613 or under K, the source is irrelevant. Well, K allows an adjustment of the payment schedule, which didn't happen here, so I'm not sure why you think the judge applied K. Can I briefly, even though I'm on a time, address that? Yeah. So in this case, there was an adjustment of the payment schedule in the government's position, and that is basically permitted under 3664K, and the adjustment was requiring Mr. Robinson to make an immediate lump sum payment towards his restitution in the amount of $2,753.21. So you're going to say any order like this requiring to turn over all the account is an adjustment of the payment schedule? It is, Your Honor. Wow. We'll see. We'll see. There's nothing specifically in K or the language in K that would require a more formal amended judgment. K doesn't talk about judgments. It just talks about adjusting the payment schedule. And K also talks about in the interest of justice, and I don't think in the interest of justice would have required anything more than what the government, what the district court did, which was entering that order, adjusting the payment schedule by requiring an immediate payment of the $2,700. But to rule in your favor, we would have to say that footnote two in the Kidd decision is dicta and it's wrong dicta, correct? In order to rule in the government's favor, we'll adjust it. Under 3613. Because as I understand what Judge Wolkin was saying there is that the government did not proceed under 3613 because it knew that the claim for garnishment or lien turnover would be subject to consumer credit protection limitations. And your argument is they're not subject to consumer credit protection limitations, correct? Our argument is that yes, it is dicta. And yes, that portion about or a lien turnover is not correct in light of the cases that were cited in the brief. Well, what part of Judge Perry's order makes you think she was relying on 3613 to turn over the whole account? As opposed to just saying that she could order it under 3664 because there's no exemption. Well, it's certainly cited and referenced in the order. It's a statute that's discussed in the order. Yeah, but I'm asking whether it was discussed for the purpose that you're invoking it or whether you're asking us to affirm on an alternative ground. Well, I guess I would point towards page 4 or 5 of the order. Yeah, she says the money is not exempt from enforcement of the judgment under 3613. Exactly. And this money is not exempt from enforcement of the judgment. C, 18 U.S.C. 3613A. Yeah, but I don't know if that's an invocation of the Debt Collection Procedures. Debt Collection Act. In the prior paragraph, she also talks about the funds are subject to the government's lien created by the restitution order entered in this case, citing 3613C. Yeah, okay. Because the property issues cash, it does not fall within any applicable categories of exempt property the defendant may claim in a criminal case, again citing 3613.  Thank you, Your Honor. Mr. Marshall. Oh, I'm sorry. We know what you want. Thank you, Your Honor. Mr. Marshall, we'll hear from you in rebuttal. I guess we'll give the clerk just a moment or the bailiff a moment. May I please remove my mask again, Your Honor? Hang on. Thank you. Oh, I apologize. So one point the government just made in its argument pointed to the cases citing the full restitution as the aim of the restitution statute. And I do just want to point out to this Court that there was a Supreme Court case, I believe it was called Lagos v. United States, which did state that even if the statute has a broad purpose, it doesn't always counsel in favor of a reward. So I don't think that the fact that the aim is to provide full restitution, again, means just unfettered access to everything, every time. Now, the government also stated that Mr. Robinson did not raise the issue of prison wages at the district court level. He was proceeding pro se, but regardless of what he raised, the district court still had a duty to consider his financial condition. And that would include the source of everything in his account, and that would include whether or not it contains prison wages. We did argue in our brief that part of the issue we took with the district court's order was that it did not determine whether any of the funds in the account were actually subject to any exemptions, whether that was under the lien statute cited by the government or under anything that would be prohibited either through 3664N or K. And I do want to state, with the little time I have left, that the lien statute at issue, again, it doesn't provide unfettered access, as the government would like the court to believe. The provision which the government cites, 3613A, specifically states that Section 303 of the Consumer Protection Act is a limitation on the collection of money under that statute, and that particular provision states that wages are only subject to a certain percentage of recovery. I believe it's set at 25% right now, but again, it's not unfettered access. To recover money through that lien statute, it specifically directs courts to limit themselves by Section 303 of the Consumer Protection Act, and that wasn't done here. That was not cited, and I do think, again, remand is... Well, the government says that wages part of the statute wouldn't apply here and that the kid footnote is wrong because the statute only applies to garnishment of the wages themselves, not to funds in an account that originally came from wages. What about that? Well, the Consumer Protection Act in Section, I believe it's 1572, defines earnings, and earnings are what are protected under this percentage garnishes statute, and it includes wages, and I don't know how prison wages would not be considered earnings. No, that's not the point. The point is that the order didn't garnish his wages. No, sir. It just took money out of an account. It encumbered everything outright without even determining whether wages were part of what was turned over. All right. I don't think we're communicating, but that's okay. Sorry, Your Honor. Go ahead. Did you have anything further? I don't have anything further, Your Honor. Thank you very much. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.